DAVID C. ALLEN (SBN 190479)
*david.allen@btlaw.com*
KELLEY S. OLAH (SBN 245180)
*kelley.olah@btlaw.com*
GABRIELLE ANDERSON-THOMPSON (SBN 247039)
*gathompson@btlaw.com*
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067
Telephone: (310) 284-3880
Facsimile: (310) 284-3894

Attorneys for Defendants
DEPUY ORTHOPAEDICS, INC. n/k/a MEDICAL DEVICE BUSINESS SERVICES INC.; JOHNSON & JOHNSON; JOHNSON & JOHNSON SERVICES, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHERRY KINNE,

Plaintiff,

vs.

DEPUY ORTHOPAEDICS, INC., an Indiana corporation; JOHNSON & JOHNSON, a New Jersey corporation; JOHNSON & JOHNSON SERVICES, INC., a New Jersey corporation; THOMAS SCHMALZRIED, M.D., an individual THOMAS P. SCHMALZRIED, M.D. A PROFESSIONAL CORPORATION, a California corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No.

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)**

JURY TRIAL DEMANDED

Complaint Filed: July 19, 2018

**NOTICE OF REMOVAL**

Defendants DePuy Orthopaedics, Inc. (“DePuy”), Johnson & Johnson, and Johnson & Johnson Services, Inc. (collectively, “removing defendants”), through undersigned counsel, hereby remove the state-court action entitled *Sherry Kinne v. DePuy Orthopaedics, Inc. et al.*, Civil Action No. BC714172, filed in the Superior

Court of California, County of Los Angeles. Removal is warranted under 28 U.S.C. § 1441(b) because this is a diversity action over which the Court has original jurisdiction under 28 U.S.C. § 1332.

In support of removal, removing defendants state as follows:

1. On or about July 19, 2018, plaintiff commenced this action against the removing defendants, Thomas P. Schmalzried, M.D., Thomas P. Schmalzried, a Professional Corporation (collectively, "Dr. Schmalzried") and un-named Doe defendants, by filing a complaint in the Superior Court of Los Angeles County, in the State of California, bearing case number BC714172.

2. In this action, plaintiff alleges that she suffered various injuries as a result of being implanted with a Pinnacle Acetabular Cup System ("Pinnacle Cup System") manufactured and sold by DePuy. (*E.g.*, Compl. ¶ 3.)

3. This is one of more than 10,000 similar cases pending around the country involving personal-injury allegations by plaintiffs who were implanted with a Pinnacle Cup System manufactured by DePuy Orthopaedics, Inc. On May 23, 2011, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2244, *In re: DePuy Orthopaedics Inc., Pinnacle Hip Implant Products Liability Litigation*, before Judge James E. Kinkeade in the United States District Court for the Northern District of Texas. Removing defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

4. As set forth more fully below, this case is properly removed pursuant to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over it, pursuant to 28 U.S.C. § 1332, and removing defendants have satisfied the procedural requirements for removal.

/ / /

/ / /

## I. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

5. The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different States.

### A. Complete Diversity Of Citizenship

6. Plaintiff is a citizen of the State of California. (Compl. ¶ 6.)

7. DePuy is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

8. Johnson & Johnson and Johnson & Johnson Services, Inc. are, and were at the time plaintiff commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in New Brunswick, New Jersey, and are therefore citizens of the State of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

9. Dr. Schmalzried and his professional corporation are residents of the State of California. (Compl. ¶¶ 12, 13.)

10. Plaintiff also names numerous "Doe" defendants whose citizenship is disregarded for purposes of removal. 28 U.S.C. § 1441(a).

11. Thus, plaintiff is diverse from all defendants except Dr. Schmalzried.

12. The presence of Dr. Schmalzried and his professional corporation in this case does not defeat diversity jurisdiction, however, because they are fraudulently joined. Under the fraudulent-joinder doctrine, a court should disregard the citizenship of a defendant where there is "no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant."

*Taylor v. Jeppesen DataPlan, Inc.*, No. C 10-1920 SBA, 2010 U.S. Dist. LEXIS 106160, at *5 (N.D. Cal. Sept. 27, 2010) (internal quotation marks and citation omitted); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

13. That is precisely the case here. Although plaintiff alleges claims against Dr. Schmalzried for strict liability, negligence, negligent and intentional misrepresentation, breach of warranty and fraudulent concealment, there is no possibility that any of these claims would succeed under California law.

***(1)*** *Plaintiff's Claims Against Dr. Schmalzried Are Doomed To Fail Under Pliva, Inc. v. Mensing.*

14. There is no possibility that plaintiff can prevail on any of her claims against Dr. Schmalzried because such claims are preempted when brought against ***non-manufacturers*** of an FDA-approved product. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 624-25 (2011); *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013); *see also* Decl. of Dr. Thomas P. Schmalzried ("Schmalzried Decl.") ¶ 2, *Plum v. DePuy Orthopaedics, Inc.* (C.D. Cal.) (attached as Ex. 1) (attesting that Dr. Schmalzried "played no role in the manufacturing, packaging, labeling, regulatory submissions, sales, inspection, distribution, and adverse event and complaint reporting, handling or tracking for the Pinnacle Cup System").

15. In *Mensing*, the U.S. Supreme Court ruled that all claims against generic drug manufacturers that were premised on a failure to warn are preempted by federal law based on the principle of impossibility preemption. 564 U.S. at 624-25. According to the Supreme Court, generic manufacturers cannot be found liable on a failure-to-warn theory because generic manufacturers have no power to unilaterally effectuate a label change; rather, they must use the same labels and warnings as those approved by the FDA with respect to the brand-name version of the drug. *Id.* at 613-15. Thus, as long as the labels and warnings for the generic form of the drug match the labels and warnings that the FDA has approved for the brand-name form

of the drug, generic manufacturers cannot as a matter of law be held liable under state tort law for failing to warn.

16. Although *Mensing* involved failure-to-warn claims, the Supreme Court has reached a similar conclusion as to product-design claims as well. In *Bartlett*, the Supreme Court held that a generic manufacturer could not "legally make [the relevant product] in another composition" under the Federal Food, Drug, and Cosmetic Act ("FDCA"). *Bartlett*, 570 U.S. at 483-84 (citation omitted). As the Court explained, "the FDCA requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based." *Id.* (citing 21 U.S.C. §§ 355(j)(2)(A)(ii)-(v) and (8)(B); 21 C.F.R. § 320.1(c)). Because it was "not possible" for the generic manufacturer defendant in *Bartlett* to "redesign" the product at issue to make it more useful or less risky, the Court concluded that causes of action based on a defective design are likewise preempted. *See id.*; *see also Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 187 (5th Cir. 2012) ("[W]e are persuaded that [plaintiff's] design defect claim [against generic manufacturer] would be preempted [under *Mensing*]."); *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 611 (N.D. Miss. 2013) (design-defect claims "are also preempted"); *In re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484 (E.D.N.Y. 2012) ("[T]he 'federal duty of "sameness,"' also applies in the context of generic drug design.") (citation omitted).

17. As other courts have found, these principles apply in spades to non-manufacturing defendants such as Dr. Schmalzried. After all, these defendants have "no authority" to effectuate changes to the product or its labeling either. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, MDL No. 2243 (JAP-LHG), No. 3:08-cv-00008-JAP-LHG, 2012 U.S. Dist. LEXIS 5817, at *26-28 (D.N.J. Jan. 17, 2012) (because a distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not 'independently do under federal law what state law requires of it'") (citation omitted); *see also Stevens v.*

*Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, [the defendant] had no ability to change labeling or warnings and thus, like a generic manufacturer, [it] cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

18. In *In re Fosamax*, for example, the court granted a distributor's motion for judgment on the pleadings after finding that the plaintiffs' state-law claims were preempted. 2012 U.S. Dist. LEXIS 5817, at *26-28. The plaintiffs in *In re Fosamax* asserted a number of claims against "the authorized distributor of branded Fosamax" that "emanated from a general theory of failure to warn," including "defective design, negligence, fraud, misrepresentation, breach of express and implied warranties, violation of consumer protection statutes, restitution, and loss of consortium." *Id*. at *20-21 (citation omitted). In rejecting the plaintiffs' claims, the district court ruled that "[a]s a distributor of Fosamax, [the distributor] ha[d] no power to change Fosamax labeling." *Id*. at *27. According to the court, "[t]hat power lies with the applicant who . . . seek[s] approval to market Fosamax" – in that case, Merck. *Id*. at *27. Additionally, the court noted that if the FDA had become aware of new safety information in connection with Fosamax use that it believed should be included in the labeling, the FDA would have notified Merck – not the distributor. *Id*. Because the distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not 'independently do under federal law what state law requires of it.'" *Id*. at *27-28 (quoting *Mensing*, 564 U.S. at 620-21). Accordingly, the court found that "the state law claims brought against [the distributor] [were] preempted." *Id*.

19. Here, all of plaintiff's claims against Dr. Schmalzried rest on either a failure-to-warn theory or a defective-design theory.[1] Because Dr. Schmalzried had no "power to unilaterally change" either the design of the FDA-regulated Pinnacle Cup System – or the warnings that accompanied it – all of plaintiff's claims against him are preempted. *See Morris v. Wyeth, Inc.*, No. 3:09-CV-854, 2011 WL 4973839, at *1 (W.D. La. Oct. 19, 2011) (dismissing plaintiff's claims for defective construction or composition, defective design, breach of express warranty, and inadequate warning under *Mensing*), *aff'd*, 713 F.3d 774 (5th Cir. 2013); *Lashley v. Pfizer, Inc.*, 877 F. Supp. 2d 466, 480-81 (S.D. Miss. 2012) (rejecting plaintiffs' contention that it was erroneous to find their claims for "failure to warn, negligence, strict liability, breach of warranty as to merchantability, breach of warranty as to fitness for a particular purpose, misrepresentation, and fraud" preempted under *Mensing*), *aff'd*, 750 F.3d 470 (5th Cir. 2014)

20. For all of these reasons, there is no possibility plaintiff would prevail on any of her claims against Dr. Schmalzried, and Dr. Schmalzried is therefore fraudulently joined.

***(2)*** *There Is No Possibility That Liability Would Be Imposed On Dr. Schmalzried.*

21. Even if plaintiff's claims against Dr. Schmalzried were not preempted by federal law, there is "no possibility that the plaintiff [would] be able to establish [her] cause[s] of action in state court against" Dr. Schmalzried for additional reasons as well. *Taylor*, 2010 U.S. Dist. LEXIS 106160, at *5.

22. **Strict Liability.** No California court would impose strict liability on Dr. Schmalzried separate and apart from *Mensing*. Although California allows

---

[1] Plaintiff also alleges defective manufacture, but plaintiff cannot prevail on such a theory against Dr. Schmalzried because not even plaintiff asserts that Dr. Schmalzried had any role in the manufacture of the Pinnacle Cup System.

application of strict-liability theories to participants outside the chain of distribution, the circumstances under which such liability is permitted are extremely narrow. In *Bay Summit Community Association v. Shell Oil Co.*, the court articulated a three-part test for strict-liability claims against a non-manufacturing, non-distributing defendant:

> (1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process.

51 Cal. App. 4th 762, 776 (1996). The court went on to explain that the fact that "an entity was a link in the chain of getting goods to the market or that it participat[ed] in marketing a defective product is not enough to establish the defendant should be held strictly liable." *Id*. at 778 (internal quotation marks and citation omitted); *see also Taylor v. Elliott Turbomachinery Co. Inc.*, 171 Cal. App. 4th 564, 576 (2009) (a claim for strict-liability failure to warn arises only where a plaintiff can prove, *inter alia*, that "the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process"). After all, and as other California courts have held, "[t]here is, implicit in the strict liability standard, a requirement that the defendant have some ability to control the manufacturing or distribution of the product." *Bruce v. Clark Equip. Co.*, No. Civ. S-05-01766 WBS KJM, 2007 U.S. Dist. LEXIS 25331, at *11 (E.D. Cal. Mar. 26, 2007); *Hanberry v. Hearst Corp.*, 276 Cal. App. 2d 680, 687-88 (Cal. Ct. App. 1969) (holding that strict liability "should not be extended . . . to a general endorser" that was not "involved in manufacturing products for, or supplying products to, the consuming public").

23. Here, as set forth above, Dr. Schmalzried "played no role in the manufacturing, packaging, labeling, regulatory submissions, sales, inspection, distribution, and adverse event and complaint reporting, handling or tracking for the Pinnacle Cup System." Schmalzried Decl. ¶ 2. Accordingly, there is no reasonable

possibility that plaintiff can prevail on her strict-liability claims against Dr. Schmalzried.[2]

24. **Negligence-Based Claims.** Plaintiff's claims for negligence and negligent failure to recall or retrofit against Dr. Schmalzried are utterly without merit because plaintiff cannot establish that Dr. Schmalzried owed any independent duty to her. As set forth in the attached declaration, Dr. Schmalzried was merely "one of eight surgeons selected by DePuy who provided assistance to DePuy with the design of the Pinnacle Cup System." Schmalzried Decl. ¶ 3. No duty arises from "being the developer, inventor, or patent holder of a product or design." *Murphy v. Aventis Pasteur, Inc.*, 270 F. Supp. 2d 1368, 1376-77 (N.D. Ga. 2003); *see also Weseloh Family Ltd. P'ship v. K.L. Wessel Construction Co.*, 125 Cal. App. 4th 152, 164 (2004) (design engineers could not be held liable for general negligence because they owed no duty of care to plaintiff property owners; courts have "invoked the concept of duty to limit [] the otherwise potentially infinite liability which would follow from every negligent act"); *In re Rezulin Litig.*, No. CV 03-1643-R(RZX), 2003 WL 25598915, at *1 (C.D. Cal. Apr. 28, 2003) (holding that a patent holder and clinical investigator of an allegedly defective prescription drug was fraudulently joined because he "owed no legal duty to any of the plaintiffs, and therefore, there [was] no possibility that the plaintiffs [could] prove a cause of action against [him]").

---

[2] In addition, plaintiff's design-defect strict-liability claim against Dr. Schmalzried is also barred because, under California law, "the entire category of medical implants available only by resort to the services of a physician are immune from design defect strict liability." *Artiglio v. Superior Court*, 22 Cal. App. 4th 1388, 1397 (1994) (same); *see also Hufft v. Horowitz*, 4 Cal. App. 4th 8, 19 (1992). There is no contention anywhere in plaintiff's complaint that her Pinnacle Cup System was obtained other than by the services of a physician.

25. These rulings make good sense. Otherwise, every individual who had any role in the design of any component of any product, such as a vehicle, would potentially be liable for negligence any time an individual was injured using it. Such an approach would result in limitless liability for millions of Americans who work in any capacity in which they provide input into the design or manufacturing of any products. Accordingly, our legal system limits liability to the actual manufacturer of a product, which has a duty of care to those who buy its products. *Morrow v. Wyeth*, No. B-05-209, 2005 U.S. Dist. LEXIS 43194, at *13-14 (S.D. Tex. Oct. 13, 2005) (noting that the law places liability on the manufacturer of an allegedly defective product, not on the specific individuals involved in the design and manufacture of the product). For this reason too, Dr. Schmalzried is fraudulently joined.

26. **Breach-of-Warranty Claims.** Plaintiff's breach-of-warranty claims against Dr. Schmalzried are barred as a matter of law because plaintiff does not allege that Dr. Schmalzried is a "seller" for purposes of warranty law. *See* Cal. U. Comm. Code § 2313 ("Any affirmation of fact or promise ***made by the seller*** to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.") (emphasis added); Cal. U. Comm. Code § 2314 (a "warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind"). As court after court has held, warranty claims are only properly brought against the party that sold the product – not against the individuals who represent or work for the manufacturer. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286 (S.D.N.Y. 2001) (sales representatives were fraudulently joined because, *inter alia*, no warranty claim could possibly be asserted against them insofar as they "were not 'sellers' of the product for purposes of warranty; the 'seller' who impliedly warranted the merchantability of Rezulin was the pharmaceutical manufacturer"); *In re Diet Drugs (Phentermine,*

*Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002) (removal proper where plaintiffs failed to cite "any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product"; "[o]n the contrary, sales representatives are not considered 'sellers' under Mississippi law, but rather, employees of the businesses who are sellers") (internal quotation marks and citation omitted).

27. Here, plaintiff makes no allegation that Dr. Schmalzried sold her the Pinnacle Cup System. Because plaintiff has not – and cannot – allege that Dr. Schmalzried was the seller – and thus the warrantor – of the product, her warranty-based claims fail as a matter of law.[3]

28. **Fraud-Based Claims.** Plaintiff's claims against Dr. Schmalzried for negligent misrepresentation, intentional misrepresentation and fraudulent concealment (collectively, plaintiff's '"fraud-based claims") cannot succeed because: (1) plaintiff does not identify a single statement made by Dr. Schmalzried that was allegedly deceptive; and (2) plaintiff fails to establish any connection between any actions by Dr. Schmalzried and her implantation with the Pinnacle Cup System that could possibly satisfy the reliance/causation elements of her fraud-based claims.

29. Under California law, causes of action for intentional misrepresentation and negligent misrepresentation require a plaintiff to prove, *inter alia*, that the defendant engaged in a misrepresentation and that the plaintiff relied on it. *See, e.g.*,

---

[3] Even if Dr. Schmalzried could be characterized as a "seller" – and he cannot – plaintiff's implied-warranty claims against Dr. Schmalzried would still be barred because plaintiff cannot possibly prove that she "relied on [Dr. Schmalzried's] skill or judgment to select or furnish a suitable product," as required under California law. *See Evraets v. Intermedics Intraocular, Inc.*, 29 Cal. App. 4th 779, 789 (1994).

*Young v. Fluorotronics, Inc.*, No. 10cv976-WQH-BGS, 2010 U.S. Dist. LEXIS 117362, at *22-23 (S.D. Cal. Nov. 3, 2010) ("[t]he . . . elements of a cause of action for [intentional misrepresentation] are: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages"); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Serv. Grp., Inc.*, 89 Cal. Rptr. 3d 473, 483 (Cal. Ct. App. 2009) ("The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage") (internal quotation marks and citation omitted).

30. Importantly, plaintiff must allege these elements of her fraud-based claims with the particularity required by Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.") (citation omitted); *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011) (holding that plaintiff must satisfy the pleading requirements of Rule 9(b) in order to state a claim for negligent misrepresentation); *In re Toyota Motor Corp., Unintended Acceleration Mktg., Sales Prac., and Prod. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2011 WL 6004569, at *19 (C.D. Cal. Nov. 30, 2011) (granting motion to dismiss CLRA claims where plaintiffs failed to meet the heightened pleading requirements of Rule 9(b)). Bald allegations of fraud cannot defeat diversity jurisdiction. *See, e.g.*, *In re Rezulin*, 133 F. Supp. 2d at 283 (defendant fraudulently joined because, *inter alia*, plaintiffs did not meet Rule 9(b)'s requirements where they failed to allege "the time and place of particular representations").

31. Here, plaintiff has not identified any statements that Dr. Schmalzried allegedly made to her (or her physician) regarding the safety or efficacy of the Pinnacle Cup System. Nor has she alleged that she (or her doctor) relied on any such statements in selecting the Pinnacle Cup System – let alone with the particularity required by Rule 9(b). Instead, plaintiff merely offers vague, unsupported allegations that all defendants – at some unspecified time and place – misrepresented the "safety" and "efficacy" of the Pinnacle Cup System. For both of these reasons, there is no "possibility" that plaintiff can recover against the physician on her fraud-based claims. *See, e.g.*, *Aronis v. Merck & Co.*, No. CIV. S-05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) (finding fraudulent joinder of a distributor where "plaintiff d[id] not allege that [the distributor] contributed in any way to her injuries"; "[t]o state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of that defendant").

32. Plaintiff's fraudulent-concealment claim fails for the additional reason that Dr. Schmalzried did not owe plaintiff a duty to disclose. *See, e.g.*, *Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1408 (9th Cir. 1992) (claim for "suppression of facts . . . generally requires a duty to disclose the concealed fact") (applying California law). A duty to disclose generally arises where there is a confidential or fiduciary relationship between the parties. *See, e.g.*, *Fulford v. Logitech, Inc.*, No. C-08-2041 MMC, 2009 WL 837639, at *1 (N.D. Cal. Mar. 26, 2009) (rejecting fraudulent concealment claim because no relationship – fiduciary or transactional – was alleged; "no duty to disclose can arise in the absence of either a fiduciary duty or a transaction between the parties"). Here, plaintiff does not allege that she had a fiduciary relationship with Dr. Schmalzried. Indeed, she does not allege any relationship or contact at all. As such, there is no possibility that plaintiff can succeed on her fraudulent-concealment claims against him.

33. For all of these reasons, there is no possibility plaintiff would prevail on any of her claims against Dr. Schmalzried, and Dr. Schmalzried is therefore fraudulently joined.

***(3)*** *Plaintiff Does Not Segregate Her Legal Allegations Against Dr. Schmalzried – Or Support Them With Any Specific Facts – Further Demonstrating That He Was Fraudulently Joined.*

34. The fact that plaintiff's legal allegations are targeted at "defendants" generally – rather than Dr. Schmalzried in particular – further demonstrates that he was fraudulently joined. For example, in her causes of action for strict liability and negligence, plaintiff makes only broad, collective and conclusory claims against a group generically described as "defendants," lumping Dr. Schmalzried together with the removing defendants. (*See, e.g.*, Compl. ¶ 45 ("Defendants designed, manufactured, distributed, sold, marketed and promoted the Pinnacle Hip system . . . ."); *id.* ¶ 57 ("The warnings and instructions provided with the Pinnacle Hip System by Defendants did not adequately warn of the potential risks and side effects of the Pinnacle Hip System"); *id.* ¶ 73 ("Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the Pinnacle Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.").) Likewise, with regard to her warranty-based claims, plaintiff makes only broad and generic allegations about unspecified representations allegedly made by all "defendants." (*See, e.g.*, *id.* ¶ 81 ("Defendants made express representations to healthcare providers and patients, including Plaintiff and Plaintiff's healthcare providers, about the safety and efficacy of the Pinnacle Hip System."); *id.* ¶ 87 ("In breach of the implied warranty given by Defendants, the Pinnacle Hip System was not of merchantable quality or safe or fit for its intended or reasonably foreseeable use").) Similarly, plaintiff's fraud-based claims only contain generic allegations directed at "defendants." (*See, e.g.*, *id.* ¶ 90 ("The Defendants falsely and

fraudulently represented to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, that the Pinnacle Hip System had been properly tested and was safe and effective for its indicated use.").)

35. As numerous courts have found, the fact that all of plaintiff's legal allegations are targeted at "defendants" generally – rather than Dr. Schmalzried in particular – further demonstrates that he was fraudulently joined. *Shah v. Wyeth Pharms., Inc.*, No. CV 04-8652 DT (MANx), 2005 WL 6731641, at *3 (C.D. Cal. Jan. 18, 2005) ("allegations against 'defendants' collectively are insufficient to warrant remand, especially when Plaintiffs fail to allege any 'particular or specific activity'" on the part of each of the non-diverse defendants) (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 391-92 (5th Cir. 2000)); *see also Gomes v. Michaels Stores, Inc.*, No. S-06-1921 LKK/KJM, 2006 U.S. Dist. LEXIS 81354, at *5-7 (E.D. Cal. Oct. 27, 2006) (dismissing non-diverse defendant and refusing to remand case where plaintiff generally "state[d] that all defendants' acts 'were performed partly within and partly outside the course and scope of their authority and employment'" but did not include any specific allegations about the non-diverse defendant) (citing complaint); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, MDL No. 1407, No. C02-423R, 2002 WL 34418423, at *2, *3 (W.D. Wash. Nov. 27, 2002); *Bennett v. Allstate Ins. Co.*, 753 F. Supp. 299, 301 (N.D. Cal. 1990) (denying motion to remand because, *inter alia*, plaintiff's complaint made "no attempt" to "differentiate between the conduct" of the defendants).

36. For this reason too, Dr. Schmalzried is fraudulently joined, and his citizenship must be disregarded for jurisdictional purposes.

**B. <u>Amount In Controversy</u>**

37. Plaintiff claims that she has suffered "persistent pain and decreased mobility," which she claims have "both worsen[ed] over time." (Compl. ¶ 3.) Plaintiff seeks general damages, economic damages and punitive or exemplary damages. (*See id.*, Prayer For Relief.)

38. It is widely recognized that personal injury claims facially meet the $75,000 jurisdictional threshold. *See, e.g.*, *In re Rezulin*, 133 F. Supp. 2d at 296 (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"). In addition, compensatory and punitive damages in excess of the jurisdictional amount of $75,000 have been awarded in product-liability cases in California. *See, e.g.*, *Stewart v. Union Carbide Corp.*, 190 Cal. App. 4th 23 (2010); *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202 (2006); *Jones v. John Crane, Inc.*, 132 Cal. App. 4th 990 (2005).

39. Other federal courts have similarly concluded that the amount in controversy exceeded $75,000 in pharmaceutical cases. *See, e.g., Smith v. Wyeth, Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand); *Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 1089663 (E.D. Pa. Apr. 22, 2009) (same).

40. Given plaintiff's claim that she has suffered "persistent pain and decreased mobility," which she claims have "both worsen[ed] over time," it is evident that the amount of recovery sought by plaintiff exceeds $75,000.

## II. REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

41. Johnson & Johnson was served with plaintiff's Complaint on August 6, 2018. DePuy and Johnson & Johnson Services, Inc. were each served with plaintiff's complaint on August 23, 2018. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

42. The Superior Court of Los Angeles County is located within the Central District of California. *See* 28 U.S.C. § 1441(a).

43. None of the removing defendants is a citizen of the State of California, the State where this action was brought. *See* 28 U.S.C. § 1441(b).

44. It is well settled that co-defendants who are fraudulently joined need not join in the removal. *See Borsuk v. Mass. Mut. Life Ins. Co.*, No C 03-630 VRW,

2003 U.S. Dist. LEXIS 25259, at *7-8 (N.D. Cal. Sept. 4, 2003). As set forth above, Dr. Schmalzried is fraudulently joined. Therefore, he need not consent to removal.

45. No previous application has been made for the relief requested herein.

46. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon removing defendants, which papers include the complaint, are attached collectively as Exhibit 2.

47. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for plaintiff and a copy is being filed with the Clerk of the Superior Court of the County of Los Angeles.

WHEREFORE, removing defendants respectfully remove this action from the Superior Court of the County of Los Angeles, in the State of California, bearing Number BC714172, to this Court.

Respectfully submitted,

DATED: September 5, 2018 **BARNES & THORNBURG LLP**

By: ______________________

David C. Allen
Kelley S. Olah
Gabrielle J. Anderson-Thompson
Attorneys for Defendants DEPUY ORTHOPAEDICS, INC. n/k/a MEDICAL DEVICE BUSINESS SERVICES INC.; JOHNSON & JOHNSON; JOHNSON & JOHNSON SERVICES, INC.